JOEL E. SOUTHWICK v. HENRY HIMMELMAN.[1]

October 29, 1909.

Nos. 16,302—(83).

**Action for Wrongful Foreclosure of Chattel Mortgage.**

An action in conversion will lie against the mortgagee of a chattel mortgage, the terms of which give the possession of the property to the mortgagor, who, before default in payment and without right under the insecurity provisions of the mortgage, takes the property from the mortgagor and sells the same in foreclosure proceedings. The foreclosure in such case is wrongful and unlawful.

**No Action when Proceedings Are Merely Defective.**

The rule would be different if the right of foreclosure in fact existed, but the proceedings were irregular or defective in form.

**Tender of Payment — Evidence.**

Evidence set forth in the opinion *held* insufficient to establish a tender of payment and that the court erred in instructing the jury that a tender might be found therefrom.

Action in the district court for Blue Earth county to recover $2,000 for the conversion of certain hotel furniture and fixtures. The answer was a general denial. The case was tried before Pfau, J., and a jury which returned a verdict in favor of plaintiff for $758.33. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, he appealed. Reversed.

*Wilson Borst,* for appellant.

*Chris Carlson* and *W. R. & C. D. Geddes,* for respondent.

BROWN, J.

Defendant was the owner of a hotel building in Mankato, this state, fully equipped with all necessary furniture and fixtures, and on July 18, 1906, he leased the building to one Town for the term of five years. As a part of the same transaction, and at the same

[1] Reported in 122 N. W. 1016.

time, he sold to Town all the hotel furniture and fixtures for $1,500, a part of which was then paid. Town executed to defendant his three promissory notes of equal amounts for the balance of the purchase price, and to secure the payment of the same a chattel mortgage upon the hotel furniture, fixtures, and furnishings. The notes were by their terms due July 18, 1907, July 18, 1908, and July 18, 1909, respectively. Town then took possession of the hotel and conducted it until the latter part of July, 1907, at which time he sold and transferred his interest in the personal property and his rights under the lease to plaintiff in this action for $1,500. Plaintiff purchased subject to the chattel mortgage, and paid Town in cash about $400; the amount due on the mortgage to defendant representing the balance of the purchase price. Defendant was informed of this transaction, and the evidence tends to show that he acquiesced therein, and that plaintiff entered into possession of the hotel with his full knowledge and consent on or about September 1, 1907. No formal written assignment of the lease was made by Town to plaintiff; but it was claimed on the trial that defendant agreed to execute to plaintiff a new lease for the remainder of Town's term. This defendant denies.

Plaintiff paid defendant the first maturing chattel mortgage note at about the time he took possession of the property, so that there was nothing due thereon at the time of the foreclosure presently to be mentioned. He continued in possession and conducted the hotel for about three weeks, or until September 18, 1907, when he vacated the same and removed elsewhere. It is his claim that he vacated the premises because defendant refused to give him a new lease, and the evidence tends to show that he repeatedly demanded one and that defendant refused to execute it. The reason for defendant's refusal to execute a formal lease is left somewhat cloudy by the evidence; but we infer that he was laboring under the impression that, inasmuch as Town had not assigned in writing his lease to plaintiff, defendant could not, without involving himself in trouble, execute another lease to plaintiff without first extinguishing in some way the rights of Town. This he evidently thought could be done by a foreclosure of the chattel mortgage on the hotel furniture, which would

leave him in a position to resell it. But this is not so seriously important.

When plaintiff vacated the premises, he claims to have left therein all the personal property which he received from Town at the time he took possession, all of which was, as already stated, covered by the chattel mortgage. Immediately after plaintiff left the premises, defendant took possession of the personal property, and, although there was at the time nothing due on the mortgage, foreclosed the same, and became the purchaser at the sale. Since that time defendant, or some member of his family, has conducted the hotel as a rooming house, using in connection therewith the hotel furniture and fixtures. Thereafter, on September 24, 1908, a year after he vacated the premises, plaintiff brought this action against defendant, on the claim and theory that the foreclosure of the chattel mortgage was unauthorized and void and amounted to an unlawful conversion of the property. The defense, more particularly referred to hereafter, was that the mortgage was rightfully foreclosed. Plaintiff had a verdict, and defendant appealed from an order denying his alternative motion for judgment notwithstanding the verdict or for a new trial.

Of the several assignments of error we deem it necessary to refer only to those challenging the correctness of certain portions of the court's instructions to the jury. We may, however, in view of a new trial of the action, say that the contention of defendant that, because at the time the action was commenced plaintiff did not have the right to the possession of the property, the action cannot be maintained, is not well taken. The action is for the wrongful conversion of the property, and the rights of the parties are controlled by the conditions existing at the date of the alleged conversion. Hodge v. Eastern Ry. Co. of Minn., 70 Minn. 193, 72 N. W. 1074; Jellett v. St. Paul, M. & M. Ry. Co., 30 Minn. 265, 15 N. W. 237. Besides, the terms of the chattel mortgage gave the right of possession to the mortgagor, to whose rights plaintiff succeeded, and defendant, as mortgagee, had no right to it, except after default, or under the insecurity clause, and then only for the purpose of foreclosure. Defendant was not holding the property as mortgagee, at

the time of the commencement of the action, for the purpose of foreclosing his mortgage, but as owner, under a prior alleged valid foreclosure, which it is claimed vested in him the absolute title to the property. If the foreclosure was unauthorized and wrongful, and therefore unlawful, defendant converted the property without right, and is liable in trover. Jones, Chattel Mortgages, § 437. The rule would be different if the right of foreclosure in fact existed and the foreclosure proceedings were merely defective in form. Powell v. Gagnon, 52 Minn. 232, 53 N. W. 1148. Defendant may, of course, even though the foreclosure was unauthorized, have the amount due on the mortgage debt deducted from plaintiff's recovery. In our opinion, the trial court properly submitted this feature of the case to the jury.

We come, then, to what we regard the only substantial error presented by the record. Though no part of the mortgage indebtedness was overdue at the time defendant foreclosed his mortgage, yet he claimed the right to do so under the insecurity provisions thereof, and for the reasons (1) that plaintiff, who had succeeded to the rights of Town, the mortgagor, had wholly abandoned the property, and (2) that the property had not been properly cared for; that it had been wasted and greatly deteriorated in value; that a part thereof had been secretly removed from the premises, disposed of, and converted to the use of either plaintiff or Town, by reason of all of which defendant deemed himself insecure, and to protect his security, and prevent a further waste and loss of the property, took possession of what remained on the premises at the time plaintiff vacated the building and foreclosed the mortgage.

The terms of the mortgage fully authorized a foreclosure for the reasons just stated, if the facts justified defendant in believing in good faith his security unsafe. If the facts sustain his contention in this respect, the foreclosure was legal and extinguished further claim to the property by plaintiff; there being no suggestion that the foreclosure was not in all other respects in conformity with the law. But plaintiff denied that he had abandoned the property, or that it had become wasted, lost, or destroyed, or by neglect deteriorated in value, or that defendant had any just or reasonable cause for

believing himself insecure.  He insisted on the trial, and again in this court, that defendant's act in foreclosing the mortgage was in bad faith and without justification.  The court submitted these several questions of fact to the jury, and we conclude, though not without some hesitation, correctly so.  The only doubt we entertain on the subject has reference to the claim that plaintiff, at the time he vacated the building, wholly abandoned the mortgaged property, which, if true, would alone justify defendant's foreclosure.  But, in view of all the evidence, we sustain the conclusion of the trial court that it presented a question of fact.

The court charged the jury in substance and effect that if plaintiff wholly abandoned the property, or if it by neglect had been wasted, lost, or made way with, by plaintiff or Town, in consequence of which defendant in good faith believed himself insecure, he had the lawful right to foreclose his mortgage, even though no part of the secured indebtedness was then due, unless, said the court, before the commencement of the foreclosure proceedings plaintiff tendered defendant payment of the mortgage debt in full.

The court further charged that there was evidence tending to show such a tender, and, if one was in fact made, then defendant could not say that he deemed himself insecure, even though the conditions relied upon by him in justification of the foreclosure in fact existed, and that his subsequent foreclosure of the mortgage after the tender would be unlawful.  In this instruction we are clear the learned court erred.

We discover no evidence in the record to support or justify the conclusion that a tender of payment was made by plaintiff.  The only evidence tending in that direction was that given by plaintiff and his attorney.  Plaintiff testified that at one stage of the negotiations had between the parties with reference to a new lease of the hotel, after defendant had intimated that to extinguish all rights of Town it was necessary to foreclose the mortgage, he offered to pay the mortgage debt.  We here quote all the testimony pertinent to the subject.  "Q. Well, did you at that time offer to pay the mortgage? A. I would not be positive whether I said I would do it, or that I could do it if it was necessary.  That I could pay the whole thing up,

I know I stated, if that was what he wanted." Witness Geddes, who was present at the time, testified: "Then Mr. Southwick [plaintiff] spoke up. and said, 'If that is all you want, I will pay that mortgage now,' and he took a big roll of bills out of his pocket and shook it at Mr. Himmelman, and said: 'If that is all you want, here is $800. I will pay the mortgage, if that is all you want.' But Himmelman said: 'I can't do it. I have to settle with Mr. Town first.'"

This testimony, at most, showed a readiness or willingness on the part of plaintiff to pay the debt at the time; but it falls short of showing an unconditional tender. The offer of payment was hypothetical, and conditioned upon the wishes of defendant. Plaintiff, at most, said that he would pay the debt if defendant wished it paid. This does not meet the requirements of the law of tender, and did not have the effect, as the trial court instructed the jury, of extinguishing the lien of the mortgage. Hunt, Tender, 3, 222; Chase v. Welsh, 45 Mich. 345, 7 N. W. 895; Niederhauser v. Detroit, 131 Mich. 550, 91 N. W. 1028. For this error a new trial must be granted.

We remark, in taking leave of the case, that plaintiff's readiness and willingness to pay the mortgage, as indicated by the testimony quoted, is a proper fact for the consideration of the jury upon the question of defendant's good faith in foreclosing his mortgage on the ground that he then believed himself insecure. But it is not, in view of the fact that defendant claimed at the trial that he did not discover the loss of part of the property until some time after the offer of payment was made, conclusive against him on the question of his good faith.

Order reversed.